UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| GREGORY JAMES ANDERSON,<br>                      Plaintiff,<br><br>             -vs-<br><br>KILOLO KIJAKAZI,[1]<br>Acting Commissioner of Social Security,<br><br>                      Defendant. | Civil Action No.: 4:20-cv-03017-TER<br><br><br>**ORDER** |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied.

## I. RELEVANT BACKGROUND

**A.   Procedural History**

Plaintiff filed an application for DIB on December 9, 2014, alleging inability to work beginning May 1, 2006. His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held on September 10, 2015, at which time Plaintiff testified. (Tr. 30). The Administrative Law Judge (ALJ) Edward T. Morriss, issued an unfavorable decision on November 20, 2015, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 25). Plaintiff filed a request for review of the ALJ's decision, which the

---

[1] Kilolo Kijakazi is the Acting Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Defendant Andrew Saul who was the Commissioner of Social Security when this action was filed.

Appeals Council denied. Plaintiff appealed to this court and on March 29, 2017, and the matter was after motion of the parties specifically for the ALJ to reevaluate the VA determination of disability. (Tr. 554). The Appeals Council remand order noted the record did not contain the complete VA disability rating decisions. (Tr. 560). Further, it was unclear if the record contained the treatment evidence supporting the VA decisions. (Tr. 560). The ALJ was to acquire such, evaluate Plaintiff's mental impairments, evaluate the VA determinations in accordance with regulations, and evaluate the evidence as to substance use under SSR 13-2p. (Tr. 561). On March 22, 2018 and May 23, 2019, ALJ Morriss held additional hearings. (Tr. 539, 494). The relevant time period was May 1, 2006 through December 31, 2011. (Tr. 476). The ALJ issued an unfavorable decision on September 3, 2019, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 487). Plaintiff filed exceptions; the Appeals Council did not assume jurisdiction but did address some of Plaintiff's arguments. (Tr.480).

Plaintiff filed this action on August 21, 2020. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born on September 29, 1962 and was forty-nine years old on the date last insured in 2011. (Tr. 486). Plaintiff had past relevant work as a food specialist. (Tr. 485). Plaintiff alleges disability originally due to thoracic back degenerative disks, lumbar spine degenerative disks, sleep apnea, cardiomyopathy, ulnar nerve neuropathy left elbow, adjustment disorder, anxiety, and depression. (Tr. 56).    Records relevant to specific issues are discussed under the appropriate issue headings.

**C.     The ALJ's Decision**

In the decision of September 3, 2019, the ALJ made the following findings of fact and

conclusions of law (Tr. 487):

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of May 1, 2006 through his date last insured of December 31, 2011 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, sleep apnea, and obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that he can occasionally climb ramps and/or stairs, as well as occasionally stoop, kneel, crouch, and crawl. The claimant cannot climb ladders, ropes, or scaffolds. He can frequently balance. The claimant can reach overhead frequently bilaterally. He must avoid concentrated exposure to extreme heat, extreme cold, and humidity.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 29, 1962 and was 49 years old, which is defined as a younger individual age 45-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work

3

>experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 1, 2006, the alleged onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(g)).

## II. DISCUSSION

Plaintiff argues the Commissioner did not meet her burden at Step Five where only the Grids were used, there was no VE, and the Grids cannot apply if there are non-exertional limitations. Plaintiff argues the ALJ erred by not complying with the Appeals Council remand order as to developing the record further. Plaintiff argues the ALJ erred in assigning weight to VA disability rating opinions. Plaintiff argues the ALJ erred in evaluating treating opinions. Plaintiff argues the ALJ erred in finding depression as non-severe. The Commissioner argues the ALJ's decision in all respects is supported by substantial evidence.

### A.    LEGAL FRAMEWORK

#### 1.    The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.  42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential

questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.     ANALYSIS**

**Step Five**

Plaintiff argues the Commissioner did not meet his burden at Step Five where only the Grids were used, there was no VE, and the Grids cannot apply if there are non-exertional limitations.

At Step Five, the ALJ must determine whether a claimant can perform "other work." 20 C.F.R. § 416.920(g). A claimant can perform "other work" if there are one or more jobs existing in significant numbers in the national economy that he can perform given his functional limitations. 20 C.F.R. §§ 404.1566(b), 416.966(b). One way an ALJ can make this determination is through the use of the Medical Vocational Guidelines ("the Grids"). 20 C.F.R. pt. 404, subpt. P, app. 2; *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983). The Grids contain numbered tabled rules that direct conclusions of "disabled" or "not disabled" based on a claimant's vocational factors and his specific exertional RFC (sedentary, light, etc.). 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(b).

Where non-exertional limitations exist, the Grid rules will not be directly applied, but are used as a framework. SSR 83-14, 1983 WL 31254, *1. The applicable Grid for a claimant's "vocational profile and maximum sustained exertional work capability" is "the starting point to evaluate what the person can still do functionally." SSR 83-14, *3. Once the ALJ decides if a person can meet the primary strength requirements of sedentary, light, or medium(standing, sitting, walking, lifting, carrying, pushing, pulling), the ALJ then decides as to how much of this occupational base remains, considering certain non-exertional limitations. SSR 83-14, *3-4. VE testimony may be helpful in the erosion inquiry but is not always required. SSR 83-14, *4; *see Golini v. Astrue*, 483 Fed. Appx. 806, 808 (4th Cir. 2012).

At Step Five, the ALJ here noted numerous additional non-exertional limitations previously found in the RFC and cited SSRs as support for the conclusions that each such additional limitation failed to significantly erode the light occupational base. The ALJ found:

> Through the date last insured, **if** the claimant had the residual functional capacity to perform the **full range of light** work, considering the claimant's age, education, and work experience, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21. The additional limitations had little or no effect on the occupational base of unskilled light work. The **postural limitations** would leave the light occupational base virtually intact (SSR 85-15). Similarly, the **limitation on climbing ladders** would not significantly erode the light occupational base (SSR 83-14). The **limitation on overhead reaching bilaterally** would not significantly erode the light occupational base as other forms of reaching are intact and the limitation is to frequent (SSR 85-15). The **environmental limitations** would not significantly erode the light occupational base, as these are not present in most occupations especially at concentrated levels (SSR 85-15).

(Tr. 486)(emphasis added).

The ALJ here gave the non-exertional RFC limits of:

- frequently balance;
- occasionally stoop, kneel, crouch, and crawl;

8

    - occasionally climb ramps and/or stairs;
    - cannot climb ladders, ropes, or scaffolds;[4]
    - frequently reach overhead bilaterally;
    - must avoid concentrated exposure to extreme heat, extreme cold, and humidity.

(Tr. 480).

  Starting with the environmental restriction, the ALJ supported the conclusion of no significant erosion of the light occupational base as to the environmental limitations with citation to SSR 85-15 . Thus, the court only analyzes what the ALJ used as support for such finding, ignoring any post-hoc rationalization.[5]

  SSR 85-15 provides:

> 5. Environmental Restrictions
> A person may have the physical and mental capacity to perform certain functions in certain places, but to do so may aggravate his or her impairment(s) or subject the individual or others to the risk of bodily injury. Surroundings which an individual may need to avoid because of impairment include those involving **extremes of**

---

[4] As to climbing ladders, the ALJ relied on SSR 83-14, which states: "Relatively few jobs in the national economy require ascending or descending ladders and scaffolding." As to climbing, SSR 83-14 also states: "On the other hand, there are nonexertional limitations or restrictions which have very little or no effect on the unskilled light occupational base. Examples are inability to ascend or descend scaffolding, poles, and ropes; inability to crawl on hands and knees; and inability to use the finger tips to sense the temperature or texture of an object." There appears to be no error in this particular part of the Step Five analysis and this particular finding is supported by substantial evidence.

[5] The undersigned recognizes there are differing views on the application of SSR 85-15("Capability to do Other Work-The Medical Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments") in relation to SSR 83-14("Capability to do Other Work - The Medical Vocational Rules as a Framework for Evaluating a Combination of Exertional and Nonexertional Impairments") where a particular RFC contains both exertional and non-exertional limitations. *See Cobbs v. Colvin*, No. 1:15-cv-1972-JMC-SVH, 2016 WL 3085906, at *12-13 (D.S.C. Apr. 1, 2016) *adopted by* 2016 WL 3059854 (May 31, 2016); *Carruthers v. Colvin*, 2013 WL 1703549, *9-10 (M.D.N.C. Apr. 19, 2013), *adopted by* 2013 WL 4811723 (Sept. 9, 2013); *Boland v. Astrue*, 2009 WL 2431536, at *6, n.12 (E.D. Va. Aug 7, 2009) *aff'd* 393 Fed. Appx. (4th Cir. 2010). The ALJ did not rely on SSR 83-14 in analyzing at Step Five the environmental limitations in the RFC here.

>    **temperature**, noise, and vibration; recognized hazards such as unprotected elevations and dangerous moving machinery; and fumes, dust, and poor ventilation.
>    ...
>    **Where the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of occupational reference materials or the services of a [VE].**

SSR 85-15, 1985 WL 56857, *8 (emphasis added). The RFC here included "avoid **concentrated** exposure." (Tr. 480)(emphasis added). Where an environmental limitation was "avoid concentrated exposure," it was error for the ALJ to rely on SSR 85-15 and the ALJ failed to meet his Step Five burden without VE testimony to produce evidence that jobs existed in significant numbers in the national economy that a plaintiff could perform with the restrictions the ALJ had given in the RFC. *Cobbs v. Colvin*, No. 1:15-cv-1972-JMC-SVH, 2016 WL 3085906, at *12-13 (D.S.C. Apr. 1, 2016), *adopted by* 2016 WL 3059854 (May 31, 2016).

The ALJ's citation to SSR 85-15 here to support his conclusion that the light work base was not significantly eroded by the environmental limitations included in the RFC is not supported by substantial evidence. "Avoid concentrated exposure" falls into neither category of "avoid excessive amounts" and "can tolerate very little." SSR 85-15 itself states "[w]here the environmental restriction falls between very little and excessive, resolution of the issue will generally require consultation of reference materials or the services of a [VE]." SSR 85-15.

As to postural limitations in the RFC of stoop, kneel, crouch, crawl, climb, ramps/stairs, and balance, the ALJ stated the light occupational base would be virtually intact based on SSR 85-15 generally. As to climbing and balancing, SSR 85-15 states: "Where a person has some limitation in climbing and balancing <u>and it is the only limitation</u>, it would not ordinarily have a significant impact on the broad world of work." Here, Plaintiff has some limitation in climbing and balancing

and it is <u>not</u> the only non-exertional limitation, so it is unclear based on SSR 85-15 and the ALJ's explanation whether it would have an impact on work. Moreover, SSR 85-15 states:"Where the effects of a person's actual limitations of climbing and balancing on the occupational base are difficult to determine, the services of a [VE] may be necessary." This issue should also be addressed at Step Five on remand. It appears VE testimony may be of benefit in this action.

As to reaching overhead, the ALJ relied on SSR 85-15. SSR 85-15 as to reaching provides: "Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a [VE] may be needed to determine the effects of the limitations." It is not clear whether substantial evidence supports the ALJ's Step Five finding as to reaching and a VE may be needed.

Based on the explanation and evidence cited by the ALJ at Step Five, the ALJ did not carry his burden that jobs existed in significant numbers in the national economy that Plaintiff could perform with the RFC the ALJ had given. This matter should be remanded for re-evaluation of Step Five based on this issue.

**Other issues**

Plaintiff argues the ALJ erred by not complying with the Appeals Council remand order as to developing the record further. Plaintiff argues the ALJ erred in assigning weight to VA disability rating opinions. Plaintiff argues this lack of records affects other issues like the ALJ's finding Plaintiff's depression as non-severe. It is noted that the record does not appear to support efforts

made by Plaintiff in obtaining this additional evidence. However, the ALJ appears to base much of his findings on the hearing testimony regarding the mental impairment. Thus, upon remand, the Commissioner should address all other issues briefed by Plaintiff; both parties should be given an opportunity to appropriately comply with 20 C.F.R. § 404.1512, § 404.1516 as to providing and/or requesting any additional evidence that is alleged to not be in the record.

### III.  CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case as to Step Five findings.  The court cannot, however, conduct a proper review based on the record presented.  Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), it is ordered the Commissioner's decision be reversed and this matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

October 25, 2021  
Florence, South Carolina

s/ Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge